**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **3VR AVIATION, LLC** | * | |
| *Plaintiff,* | * | |
| v. | * | **Civil Case No: 1:26-CV-00048-JMC** |
| **OBSIDIAN INSURANCE COMPANY** | | |
| | * | |
| *Defendant.* | | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff, 3VR Aviation, LLC (the "Plaintiff"), filed the present case on January 7, 2026, against Defendant, Obsidian Insurance Company (the "Defendant"), alleging breach of contract. (ECF No. 3). Two motions are currently pending: (1) Plaintiff's Motion for Partial Summary Judgment (ECF No. 20) and (2) Defendant's Motion for Summary Judgment (ECF No. 21). The motions are fully briefed, (ECF Nos. 20, 21, 22, 23, 24) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, Defendant's Motion for Summary Judgment (ECF No. 21) shall be GRANTED and Plaintiff's Partial Motion for Summary Judgment (ECF No. 20) shall be DENIED.

## I.    BACKGROUND

The instant litigation arises out of an insurance policy to insure an aircraft. (ECF. No 1) Defendant issued an insurance policy to Plaintiff to insure a 2005 Cirrus Design Corp. SR22 aircraft (the "Insured Aircraft") from the period May 31, 2024, to May 31, 2025 ("the Policy"). (ECF No. 20-2 at 3). The Policy contained an endorsement titled, "Requirements for the Pilot Flying the Aircraft," which listed the names of covered pilots and minimum qualifications for those pilots when using the aircraft. (ECF No. 20-2 at 25). Dr. Stephen Olexo was listed in the Policy as an approved pilot subject to those minimum qualifications. *Id.* In this endorsement, the stated requirements are as follows:

1

Prior to acting as sole pilot in command must receive and log a minimum of 10 hours dual flight instruction of which 3 hours must be instrument flight instruction, and must also include a minimum of 15 takeoffs and landings to a full stop, all in the insured make and model aircraft.

*Id.*  From August 2024 to April 2025, Dr. Olexo underwent flight training by way of the Cirrus "Embark Program," taught by Ms. Cathleen Steele.  (ECF No. 20-3 at 2).  "The Embark program provides up to ten hours of flight instruction with an authorized Cirrus training partner, tailored to the pilot's experience level."  *Id.* Ms. Steele was Dr. Olexo's instructor "for transitioning into a Cirrus SR-22 Aircraft which was otherwise used during the course of my providing flight instruction to him."  *Id.* The training logs are as follows:

| | | |
|---|---|---|
| 08/05/2024 | 3.0 hours of flight instruction | 9 landings |
| 08/06/2024 | 0.5 hours of flight instruction | 1 landing |
| 09/02/2024 | 1.2 hours of flight instruction | 5 landings |
| 10/21/2024 | 2.0 hours of flight instruction | 6 landings |
| 10/27/2024 | 1.8 hours of flight instruction | 4 landings |
| 04/22/2025 | 2.0 hours of flight instruction | 6 landings |

*Id.* at 3, 5-6. In total, Dr. Olexo received 10.5 hours of "flight instruction" and performed thirty-one landings in the Insured Aircraft.  *See id.* Ms. Steele testified that she provided Dr. Olexo with "flight instruction, including instruction on how to use the Aircraft's flight deck instruments, including but not limited to its Primary Flight Display, GPS/Nav-Com Radios, Autopilot, and Engine instruments." *Id.* at 3. "The purpose of this instruction was to *familiarize* Mr. Olexo with the Aircraft, its flight instruments, and its handling qualities."  *Id.* (emphasis added).  "The purpose of this instruction was not to provide "instrument training" as defined by 14 C.F.R. § 1.1, as Mr. Olexo was neither seeking nor did the Embark program offer to Mr. Olexo an instrument pilot rating which requires different and significantly more instruction and training."  *Id.* At her deposition, Ms. Steele testified to the following:

Q: Ma'am, would you agree with the following sentence: Prior to April 30, 2025, that's the date of the crash, Dr. Olexo had not logged three hours of instrument flight instruction in the subject  SR22?
A: I do not agree with that.
Q: When did he log the three hours?
A: Well, all that training was instrument training.

(ECF No. 20-4 at 5). She also avers that they spent "[m]ore than half" of the instructional time with Dr. Olexo on training that included instrument flight instruction, i.e., instructing him on the aircraft's instruments. (ECF No. 20-3 at 4).

Dr. Olexo, on the other hand, testified at his deposition that "[s]imulated [i]nstrument training is for [instrument flight rules ("IFR")]". ECF No. 21-6 at 3. Dr. Olexo testified that IFR training means flying the aircraft and learning different approach and holding patterns and different ways to navigate "purely by instruments." *Id.* at 3-4. Dr. Olexo further stated that flying under IFR conditions means flying with a particular certification through schooling, but pilots who fly with the instruments of an aircraft doesn't necessarily mean all IFR qualifications are satisfied. *See id.* at 6. Dr. Olexo agreed that "the point of instrument flight rules would be [that] there are occasions when you cannot fly by visual cues…" *Id.* at 7.

On April 30, 2025, Dr. Olexo piloted the Insured Aircraft for the first time as sole pilot in command. (ECF No. 21-1 at 2). During this flight, the Insured Aircraft was damaged. *Id.* On June 6, 2025, Defendant denied coverage for the subject loss, citing that Dr. Olexo had failed to attain "3 hours of instrument instruction from his 10 hours of Cirrus training as outlined in the Pilot Warranty." (ECF No. 21-3 at 2). Seven months later, Defendant issued a new denial letter, clarifying that the Defendant had denied coverage because Dr. Olexo was "missing the 3 hours of instrument flight instruction from his 10 hours of Cirrus training as outlined in the Pilot Warranty. (ECF No. 21-5 at 2).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

### III.   ANALYSIS

The sole issue before the Court is whether the requirement that a covered pilot "must receive and log a minimum of 10 hours dual flight instruction *of which 3 hours must be instrument flight instruction…*" entitled either party to judgment as a matter of law based on their respective interpretations. Defendant argues that the language, "instrument flight instruction" unambiguously means instrument flight training (such as that which would lead to an instrument rating), and the parties agree Dr. Olexo did not receive such training. (ECF No. 21-1 at 6). Plaintiff argues that the same language means the policy required only instruction about the flight instruments for three hours because the phrase "instrument flight instruction" is not identical to that in the Federal Aviation Administration (the "FAA")'s notion of

4

"instrument flight training" and the endorsement does not expressly adopt the FAA. (ECF No. 20-1 at 7). In essence, Plaintiff argues that as a matter of law, Defendant did not draft into the Policy technical language or define it as such, and as a result, it unambiguously means Mr. Olexo was not expected to conform with a technical term from the industry. Thus, Plaintiff urges the term "instrument flight instruction" should be understood according to its ordinary meaning, which encompasses all the time that Dr. Olexo spent being instructed "on the use of the aircraft's instruments." (ECF No. 20-1. at 9). Reyling on Ms. Steele's deposition testimony that she did not agree with the statement that Dr. Olexo had not logged three hours of instrument flight instruction, Plaintiff essentially urges that the "instrument flight instruction" was encompassed by his other training. *Id.* Finally, Plaintiff maintains that if the term "instrument flight instruction" is ambiguous, this Court should resolve any ambiguity in its favor. *Id.* at 10. To this point, Plaintiff again references Ms. Steele's testimony that Dr. Olexo's training included instruction on flight deck instruments and her disagreement with the statement that Dr. Olexo had not logged three hours of instrument flight instruction. *Id.* Defendant relies on Dr. Olexo's testimony about what IFR training means in support of its argument that "instrument flight instruction" unambiguously refers to the kind of training that the FAA requires to obtain an instrument rating because the term "instrument flight" is unambiguous as a matter of law. Therefore, no matter whether the parties use the terminology, "training" or "instruction," technical language has been incorporated into the policy.

When interpreting contracts, "Maryland courts subscribe to the objective theory," in which the primary goal is to "ascertain the intent of the parties in entering the agreement and to interpret 'the contract in a manner consistent with [that] intent.[1]'" *Credible Behav. Health, Inc. v. Johnson*, 466 Md. 380, 393 (2019) (quoting *Ocean Petroleum, Inc. v. Yanek*, 416 Md. 74, 88 (2010)). Thus, when "the clear language of a contract is unambiguous, the court will

---

[1] There is no dispute that Maryland law governs the contract here.

5

give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used." *W.F. Gebhardt & Co. v. Am. Euro. Ins. Co.*, 250 Md. App. 652, 668, 252 A.3d 65 (Md. Ct. Spec. App. 2021) (quoting *Md. Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 695 (2015)).

A contract is ambiguous "if, when read by a reasonably prudent person, [the language] is susceptible of more than one meaning." *Calomiris v. Woods*, 353 Md. 425, 436, 727 A.2d 358 (1999). In determining whether a contract is ambiguous, the court considers "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution[.]" *Id.* (quoting *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486 (1985)).

> Although providing relevant context may necessarily require consultation of evidence beyond the four corners of the contract itself, it does not extend to extrinsic or parol evidence of the parties' subjective intent, such as evidence of the parties' negotiations. Such evidence may be considered only after a court first determines that the relevant contract language is ambiguous, which occurs when, viewing the plain language in its full context, a reasonably prudent person could ascribe more than one reasonable meaning to it.
>
> In interpreting the plain language of a contract in context, we attempt to construe the contract as a whole, interpreting separate provisions harmoniously, so that, if possible, all of them may be given effect. Construing the contract as a whole requires that effect be given to each clause to avoid an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed.
>
> It is a bedrock principle of contract interpretation in Maryland that our courts consistently strive to interpret contracts in accordance with common sense.

*Lyles v. Santander Consumer USA Inc.*, 492 Md. 670, 682–83 (2025) (quoting *Adventist Healthcare, Inc. v. Behram*, 488 Md. 410, 432–34 (2024) (emphasis added); *see also Dumbarton Improvement Ass'n v. Druid Ridge Cemetery Co.*, 434 Md. 37, 52, 73 A.3d 224 (2013) (quoting *Sagner v. Glenangus Farms, Inc.*, 234 Md. 156, 167, 198 A.2d 277 (1964)). In the absence of "'an indication that the parties intended to use words in the policy in a

6

technical sense, they must be accorded their customary, ordinary, and accepted meaning.'" *Blackstone Intern. Ltd.*, 442 Md. at 695 (quoting *Mitchell v. Md. Cas. Co.*, 324 Md. 44 56, 595 A.2d 469 (1991)). However, if there is evidence that the parties intended to ascribe a special or technical meaning to certain words used in an insurance contract, those words are construed in accordance with that understanding. *Valliere v. Allstate Ins. Co.*, 324 Md. 139, 142, 596 A.2d 636 (1991) ("When a policy defines a term in a manner which differs from the ordinary understanding of that term, the policy definition controls."); *see also Dutta v. State Farm Ins. Co.*, 363 Md. 540, 556, 769 A.2d 948 (2001).  Finally, "'unlike the majority of other states, Maryland does not follow the rule that insurance policies are to be most strongly construed against the insurer.'" *Capital City Real Estate, LLC v. Lloyd's London*, 788 F.3d 375, 379 (4th Cir. 2015) (quoting *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md. App. 72, 97, 699 A.2d 482 (1997)).

To begin, the Policy insures an aircraft and was drafted with the intent to define the contours of applicable coverage should the Insured Aircraft suffer damage as a result of its operation. *Calomiris*, 353 Md. at 436.  As an initial matter, the Court does not find persuasive the argument that Defendant must have used verbatim FAA terminology in order to draft an unambiguous contract, as from what the Court can make of the FAA provisions discussed in greater detail below, terminology varies.  Indeed, Maryland applies a common sense approach to construing contracts. *Lyles*, 492 Md. at 682–83. The Court understands Defendant's argument to be that in view of the FAA's instrument training regulations, any reasonable person in the industry would understand the term "instrument flight instruction" to refer to three hours of training consistent with "instrument flight" rating instruction under the FAA.  In that context, it is seemingly undisputed that instrument flight instruction means flying only by instrument and without visual cues.  Thus, Defendant argues that the FAA provisions describing "instrument flight" training illustrate that the term has an unambiguous technical meaning.

Review of the FAA regulations supports Defendant's argument.  14 C.F.R. §§ 61.61, *et. seq.*, repeatedly refer to in various instances to "instrument flight" as a unique modifier.  For example, 14 C.F.R. § 61.65(d) requires "[t]here hours of <u>instrument flight training</u> from an authorized instructor in an airplane that is appropriate to the instrument-airplane rating within 2 calendar months before the date of the practical test."  *See also* 14 C.F.R. § 61.67, 61.68, 61.109, and 61.161.  Defendant is also correct in stating 14 C.F.R. § 61.185 describes the requirements to apply for a flight instructor certificate to include "[t]he aeronautical knowledge areas for the instrument rating applicable to the category for which <u>instrument flight instructor privileges</u> are sought." Similarly, 14 C.F.R. § 91.109 provides the requirements for using an aircraft for flight instruction, including those for an aircraft to be used for "<u>instrument flight instruction</u>."   Thus, the Court observes that the notion of "instrument flight" training, instruction, simulated training, and device training are particularized under the FAA. 14 C.F.R. §§ 61.61, *et. seq*.  The Court further observes this is consistent with Dr. Olexo's testimony. Moreover, although Plaintiff argues that instrument flight "instruction" is ambiguous, there is no question the parties all understood the requirements of dual flight "instruction" and afforded that undefined term a technical meaning.

Here, the Policy requires ten hours of dual flight instruction, of which three must be "instrument flight instruction."  In the context of the insurance policy as a whole, the Court finds that "instrument flight instruction" unambiguously requires three hours of instrument flight instruction consistent with the industry meaning described above to achieve instrument rating.  Looking to the language of the policy itself, there is undisputed evidence that instrument flight instruction is not attainable simply by undergoing ten hours of dual flight instruction. Should simple instruction on the aircraft's instruments be all that the policy requires, then it would necessarily be encompassed by "dual flight instruction."  Such a reading of the Policy as urged by Plaintiff would "cast[] out or disregard[] a meaningful part of the language" By

8

rendering the 3-hour requirement meaningless. *Lyles*, 492 Md. at 682–83.  Indeed, the Court is mindful that contracts must be construed with common sense so as to give effect to all provisions included in the Policy.  *See id.*  The Court cannot conceive—nor does Plaintiff suggest—any way doing so would be possible if "instrument flight instruction" simply means instruction about the instruments.

The Court therefore agrees with Defendant that were the three hours of instrument flight instruction to simply mean instruction about the different instruments, there would be no need to write in a requirement of three hours of "instrument flight instruction," because a pilot would necessarily obtain such instruction by way of the ten hours of dual flight instruction. It is unclear why Ms. Steele's testimony suggests Dr. Olexo received five hours of instrument instruction, as neither Ms. Steele nor the logbook describes what of the dual flight instruction counts as "instrument flight instruction," nor did Dr. Olexo understand it that way. Reading the contract as a whole and considering its character, purpose, the circumstances at the time of its execution, the Court finds that "instrument flight instruction" in context means instrument training as a particularized method for operating an aircraft purely by instrument as described by the FAA.  *Calomiris*, 353 Md. at 436.

Therefore, Defendant's Motion for Summary Judgment (ECF No. 21) must be GRANTED and Plaintiff's Motion for Partial Summary Judgment (ECF No. 20) must be DENIED.

## IV.    CONCLUSION

For the foregoing reasons, it is this 13th day of July 2026, hereby **ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 21) is GRANTED and Plaintiff's Motion for Partial Summary Judgment (ECF No. 20) shall be DENIED. The Clerk is kindly directed to close the case.

Dated: July 13, 2026                                  _____/s/_____
                                                     J. Mark Coulson
                                                     United States Magistrate Judge